**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Jason Mearing, | No. CV-23-00216-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff David Jason Mearing's Application for Disability Insurance Benefits by the Social Security Administration (SSA) under the Social Security Act. Plaintiff filed a Complaint (Doc. 1, Compl.) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 13, Pl. Br.), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 17, Def. Br.), and Plaintiff's Reply (Doc. 18, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 10, R.) and now reverses the decision of the Administrative Law Judge (ALJ) (R. at 11–35) as upheld by the Appeals Council (R. at 1–3).

## I.    BACKGROUND

On November 9, 2017, the SSA denied Plaintiff's prior claim for Disability Insurance Benefits (DIB). (R. at 109.) On December 10, 2020, Plaintiff filed another application for DIB alleging changed circumstances for a period of disability beginning November 7, 2017. (R. at 14.) Plaintiff's new claim was initially denied on April 14, 2021. (R. at 14.) Plaintiff then testified at a hearing before an ALJ on October 14, 2021. (R. at

36.) On January 13, 2022, the ALJ denied Plaintiff's application, and on December 5, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. at 1, 11). On February 1, 2023, Plaintiff filed this action seeking judicial review of the denial.

The Court has reviewed the medical evidence and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, hypertension, sinus tachycardia, obesity, fibromyalgia, mood disorder, history of ankylosing spondylitis, degenerative disc disease, status post spinal fusion, depression, and anxiety. (R. at 18.)

Ultimately, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404." (R. at 18.) The ALJ found that Plaintiff has "the residual functional capacity to perform light work [] except that [Plaintiff] can occasionally lift and or carry twenty pounds and frequently lift and carry ten pounds." (R. at 20.) Furthermore, Plaintiff "can perform work that requires up to six months to learn techniques, require information and develop the facility needed for an average job performance." (R. at 20.) The ALJ also found that Plaintiff can have occasional in person contact or frequent virtual contact with supervisors, coworkers, and the public. (R. at 20.) Additionally, Plaintiff can sit for eight hours and stand or walk for six hours of an eight-hour day with normal breaks. (R. at 20.) Accordingly, the ALJ found that although Plaintiff was unable to perform any past relevant work, he could perform other jobs, such as a small products assembler, gasket inspector, or sorter. (R. at 30.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based

on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**III.    ANALYSIS**

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred in rejecting the assessments from agency examining consultants and the treating nurse practitioner, and (2) the ALJ erred in rejecting Plaintiff's symptom testimony.

**A.    Medical Opinions**

Plaintiff contends that the ALJ gave insufficient reasons for rejecting the opinions of Dr. Thomas Wykes, Dr. Steven Newman, PA Christopher Morgan, and nurse practitioner Vickey Taylor. (Pl. Br. at 11.)

The Ninth Circuit no longer accords special deference to a treating or examining physician. *Woods v. Kijakazi*, 32 F. 4th 785, 792 (9th Cir. 2022). In 2017, the Social Security Administration amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The 2017 regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). Other factors, which an ALJ "may, but [is] not required to[] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(b)(2), (c).

Moreover, the Ninth Circuit held its requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion is incompatible with the revised regulations. *Woods*, 32 F. 4th at 790. Nonetheless, in rejecting an treating or examining doctor's opinion as unsupported or inconsistent, an ALJ must provide an explanation—that is, reasons—supported by substantial evidence. *Id.* This means that the ALJ "must 'articulate . . . how persuasive' [she] finds 'all of the medical opinions' from each doctor or other source, and 'explain how [she] considered the supportability and

- 4 -

consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)).

### 1.    Dr. Wykes

On July 12, 2018, Dr. Wykes, a licensed psychologist, examined Plaintiff and diagnosed him with (1) "other specified schizophrenia spectrum and other psychotic disorder; attenuated psychosis syndrome," (2) panic disorder, (3) generalized anxiety order, (4) persistent depressive disorder, and (5) "somatic symptom disorder, with predominant pain, persistent, severe." (R. at 316–23.) Dr. Wykes opined that Plaintiff would not be able to understand, carry out, or remember instructions on a sustained basis; respond appropriately to supervision or work pressures in a work setting due to anxiety and panic attacks; or deal with changes in a routine work setting. (R. at 322.)

The ALJ found that Dr. Wykes's opinion was "not consistent with or supported by the evidence" because the diagnoses of schizophrenia spectrum, attenuated psychosis syndrome, and somatic symptom disorder "are not consistent with [Plaintiff's] treating mental health and medical providers' diagnoses," which raises the question of whether the additional opinions by Dr. Wykes are "similarly unreliable." (R. at 27.) The ALJ added that there is minimal evidence of mental health treatment and the course of treatment is not what would be expected if Plaintiff were as limited as alleged. (R. at 27.) The ALJ further noted that Plaintiff reported improvement with medication following a hospitalization in 2019. (R. at 27.) The ALJ stated that it would have been reasonable to expect Plaintiff to seek regular treatment and report those symptoms to treating medical providers if he were experiencing severe and disabling symptoms. (R. at 27.)

Contrary to the ALJ's statements, however, the medical records include references to Plaintiff's medications, such as Zoloft and Wellbutrin, counseling, and avoiding situations that may trigger panic attacks or tremors. (R. at 317–19.) These contradict the ALJ's determination of "minimal evidence of [mental health] treatment." The Court finds that the ALJ did not support her conclusion with substantial evidence, and thus the ALJ erred in discounting Dr. Wykes's opinion.

- 5 -

### 2. Dr. Newman

On February 25, 2019, Dr. Newman, a psychologist, examined Plaintiff and opined that his "abilities to maintain regular attendance would be moderately to severely impaired depending on the severity of depressive symptoms" and Plaintiff's "ability to adapt and manage himself, including psychologically-based symptoms, general adaptation and ability to respond to workplace demands, would be moderately to severely impaired, again depending on the level of depression and anxiety." (R. at 407–10.) The ALJ found this opinion "only partially consistent with the record," taking specific issue with Dr. Newman's opinion regarding the severity levels of Plaintiff's depression and anxiety. (R. at 28.) The ALJ cited Plaintiff's reports of his symptoms improving to support the conclusion that his symptoms "would not have resulted in limitations greater than found in [the ALJ's] decision for any 12 month time period." (R. at 28.) The ALJ added that Plaintiff reported that his medications continue to work well. (R. at 28.) The ALJ also noted that Plaintiff had "very little treatment for pain and there is no reason to believe his pain level would not have improved without appropriate treatment." (R. at 28.) However, Dr. Newman's report stated that Plaintiff was taking eight current medications (inhalers, Lyrica, hydroxyzine, bupropion, sertraline, metformin, atorvastatin, and lisinopril) (R. at 409), which constitutes substantial treatment for depression and pain. Dr. Newman's diagnoses are consistent with Plaintiff's interview and reported symptoms. The Court finds that the ALJ did not support her conclusion with substantial evidence, and thus erred in discounting Dr. Newman's opinion.

### 3. PA Morgan

On February 23, 2019, PA Morgan examined Plaintiff and opined that he had limited ability to sit, stand, or walk for periods over fifteen to twenty minutes due to pain. (R. at 401–06.) The ALJ again found this opinion "inconsistent with the record" because there was "very little evidence of treatment for pain" and Plaintiff's moves and travels after the alleged onset date "presumably would require the ability to sit more than fifteen minutes at a time." (R. at 27–28.) But the evidence does not show that these moves and

travel constituted an activity inconsistent with severe pain and in any event could have included accommodations, so Plaintiff's moves and travels could have been completed without contradicting the medical opinion. Indeed, Plaintiff testified that during the trip to which the ALJ referred, a 10-hour drive took him 16–17 hours because he frequently stopped. (R. at 26.) Moreover, PA Morgan's report lists Plaintiff taking twelve current medications, including Enbrel 50 mg/ml weekly, Flovent HVA 110 mcg, Proair HFA, Amitriptyline 100 mg, Loratadine 10 mg as needed, Aspirin 81 mg, Bupropion HCL 75 mg, Sertraline HCL 100 mg twice daily, Metformin HCL 1000 mg twice daily, Lisinopril 5 mg, Atorvastatin 40 mg, and Lyrica 100 mg thrice daily (R. at 401), which is substantial evidence of treatment for depression and pain. The Court finds that the ALJ did not give sufficient reasons supported by substantial evidence and thus, the ALJ erred in her analysis by discounting PA Morgan's opinion.

### 4. FNP Taylor

On September 23, 2021, FNP Taylor who treated Plaintiff, opined that he was "incapable of even 'low stress' jobs" and would be off task 25 percent or more of a typical workday. (R. at 1433.) She also indicated that Plaintiff could never perform fine manipulation with his fingers or reach with his arms. (R. at 1436.) Additionally, FNP Taylor noted that Plaintiff should walk every fifteen minutes for five minutes. (R. at 1435.) The ALJ found this opinion "inconsistent with the record" because the specific limitations about elevating his legs or walking every 15 minutes for 5 minutes are not recommended in treatment records and there is no explanation regarding the extreme reaching and fine manipulation limitations she reports. (R. at 28.) The ALJ adds that Plaintiff reported that Meloxicam had been "pretty effective" since he started it. (R. at 28.) The ALJ further discounts FNP Taylor's opinion because she reported that she began to treat the claimant in January 2021, but the earliest treatment record with FNP Taylor is "well after January 2021." (R. at 28.)

One of Plaintiff's records indicates treatment by FNP Taylor on January 21, 2021 (R. at 1421), so the ALJ erred in that finding and the Court therefore does not find the

ALJ's reason to discount FNP Taylor's opinion well substantiated. Next, a report that medication is "pretty effective" does not a preclude a medical opinion of Plaintiff's functional capacity that found his prognosis "poor." Furthermore, Plaintiff's inability to walk for long periods of time is substantiated by other records, such as PA Morgan's report. Finally, while FNP Taylor did not elaborate on Plaintiff's fine manipulation and reaching limitations, she noted that Plaintiff had 100 percent use of his hands to grasp, turn, or twist objects. (R. at 1436.) The Court finds that the ALJ did not give sufficient reasons supported by substantial evidence and thus, the ALJ erred in discounting FNP Taylor's opinion.

### B.    Symptom Testimony

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)). For example, "[i]n evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). But the ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony. *Id.* at 681. The ALJ may also properly consider inconsistencies in the claimant's testimony, including inconsistencies between the claimant's testimony of daily activities and symptom testimony. *Id.* When there is no evidence of malingering, an ALJ may only discount a claimant's symptom testimony if the ALJ provides "clear and convincing reasons." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022). The Ninth Circuit has clarified that this standard is not whether the reviewing court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id.* at 499.

The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, "[Plaintiff's] statements

concerning the intensity, persistence, and limiting effects of [his] symptoms [were] not entirely consistent with medical evidence and other evidence in the record." (R. at 26.) The ALJ cited medical records that Plaintiff's physical examination was normal, motor examination was normal, and Plaintiff's gait was normal. (R. at 26.) The ALJ added that there was "minimal evidence of treatment for pain" and it would be reasonable to expect Plaintiff to seek regular treatment and report his symptoms to treating medical providers. (R. at 26.) The ALJ reasoned that the course of treatment and use of medication was not what would be expected if Plaintiff were experiencing disabling pain and found that "large gaps in treatment and the record does not support a finding of disabling symptoms for any 12-month period." (R. at 26.) Furthermore, the ALJ cited a prior unfavorable DIB decision and stated there was "no reason to believe [Plaintiff] was more limited than found in [that] decision prior." (R. at 26.) The ALJ also cites Plaintiff's trips from Colorado to Wyoming and then to Arizona after the alleged onset date, which presumably required the ability to sit for more than 15 minutes at a time. (R. at 26.)

However, the ALJ failed to support her conclusion that Plaintiff's normal physical examination, normal motor examination, and normal gait precluded a finding that Plaintiff suffered from the limitations he described in his testimony. The ALJ's claim of minimal evidence of treatment and medication is undermined by the treatment records, including those showing Plaintiff's extensive use of medication. (R. at 308.) Next, a prior unfavorable decision does not preclude a present finding of disability. "The [plaintiff], in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." *Id.* (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)); *see* SSAR 97-4(9), 1997 WL 742758, at *3 (Dec. 3, 1997). Here, the ALJ found that plaintiff "has rebutted the presumption of continuing non-disability by showing changed circumstances." (R. at 17.) Finally, as stated above, the ALJ does not substantiate her conclusion that Plaintiff's two instances of travel constitute activities that are inconsistent with Plaintiff's symptom testimony. The Court finds that the ALJ's reasons for discounting

Plaintiff's symptom testimony were not sufficiently convincing, and the ALJ thus erred in considering that testimony.

### C.    Credit as True

Plaintiff argues that his case should be remanded for a calculation of benefits under the credit-as-true rule. (Pl. Br. at 25.) The credit–as–true standard, if applied, results in a remand of Plaintiff's case for a calculation and payment of benefits. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). It applies if each part of a three–part standard is satisfied. *Id*. First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*.

The Court agrees that Plaintiff's case presents the "rare circumstances" in which the credit-as-true rule applies. *Treichler*, 775 F.3d at 1099. First, the record in this case was fully and extensively developed and further proceedings would be unproductive. Defendant has not identified any useful purpose that would be served by remanding this case for an ALJ to evaluate Dr. Wykes's, Dr. Newman's, PA Morgan's, and FNP Taylor's assessments or Plaintiff's credibility again. Next, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Dr. Wykes, Dr. Newman, PA Morgan, and FNP Taylor. These medical opinions do not contradict other information in Plaintiff's medical record. The ALJ also failed to properly weigh Plaintiff's symptom testimony. Finally, if the improperly discredited evidence were credited as true, then considering the whole record, including the testimony of the Vocational Expert (R. at 66–69), the ALJ would be required to find that Plaintiff is disabled. Therefore, the Court will remand this case for a calculation and entry of benefits.

**IT IS THEREFORE ORDERED** reversing the January 13, 2022 decision of the Administrative Law Judge (R. at 11–35) as affirmed by the Appeals Council (R. at 1–3).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation and entry of benefits.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment and close this case.

Dated this 18th day of July, 2024.

_____
Honorable John J. Tuchi
United States District Judge

- 11 -